# United States Court of Appeals
# For the Second Circuit

---

August Term 2022

Submitted:  May 5, 2023
Decided:  March 4, 2025

No. 21-6623

---

MUK CHOI LAU,

*Petitioner,*

*v.*

PAMELA BONDI, United States Attorney General,

*Respondent.*\*

---

Before:     JACOBS, SULLIVAN, and KAHN, *Circuit Judges.*

Muk Choi Lau, a native and citizen of China, petitions for review of a final order of removal by the Board of Immigration Appeals (the "BIA") affirming a decision of an Immigration Judge that found Lau inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) and ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h) (a "212(h) waiver").  In ordering that Lau be removed, the agency concluded – among other things – that Lau's conviction for trademark counterfeiting constituted a crime involving moral turpitude (a "CIMT"), that this

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

crime did not qualify as an excepted "petty offense," that Lau was properly classified as an applicant for admission when he returned to the United States from abroad while this criminal charge was pending, and that he was not entitled to a 212(h) waiver. On appeal, Lau argues that the agency erroneously concluded that (1) his conviction for trademark counterfeiting constituted a CIMT, (2) the Department of Homeland Security ("DHS") properly treated him as an applicant for admission at the time of his reentry, and (3) he did not qualify for a 212(h) waiver. Because we agree with Lau that DHS improperly classified him as an applicant for admission under 8 U.S.C. § 1182(d)(5)(A) by paroling him into the United States upon his return from abroad, we need not address Lau's other claims of error. We therefore **GRANT** Lau's petition for review, **VACATE** the final order of removal, and **REMAND** this case to the agency with instructions to terminate removal proceedings against Lau on the basis of his inadmissibility under section 1182(a), without prejudice to any future deportation proceeding, such as one brought pursuant to 8 U.S.C. § 1227(a).

> Mike P. Gao, Law Offices of Mike P. Gao, P.C., Flushing, NY, *for Petitioner*.
>
> Kiley Kane, Senior Litigation Counsel; Stefanie A. Svoren-Jay, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, *for Respondent*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Muk Choi Lau, a native and citizen of China, petitions for review of a final order of removal by the Board of Immigration Appeals (the "BIA") affirming a decision of an Immigration Judge ("IJ") that found Lau inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) and ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h) (a "212(h) waiver"). In ordering that Lau be removed, the agency

concluded – among other things – that Lau's conviction for trademark counterfeiting constituted a crime involving moral turpitude (a "CIMT"), that this crime did not qualify as an excepted "petty offense," that Lau was properly classified as an applicant for admission when he returned to the United States from abroad while this criminal charge was pending, and that he was not entitled to a 212(h) waiver.  On appeal, Lau argues that the agency erroneously concluded that (1) his conviction for trademark counterfeiting constituted a CIMT, (2) the Department of Homeland Security ("DHS") properly treated him as an applicant for admission at the time of his reentry, and (3) he did not qualify for a 212(h) waiver.  Because we agree with Lau that DHS improperly classified him as an applicant for admission under 8 U.S.C. § 1182(d)(5)(A) by paroling him into the United States upon his return from abroad, we need not address Lau's other claims of error.  We therefore GRANT Lau's petition for review, VACATE the final order of removal, and REMAND this case to the agency with instructions to terminate removal proceedings against Lau on the basis of his inadmissibility under section

1182(a), without prejudice to any future deportation proceeding, such as one brought pursuant to 8 U.S.C. § 1227(a).

## I.    BACKGROUND

### A.    Facts

Between 2001 and 2004, Lau, a Chinese national, made several short trips to the United States.  Over the next three years, Lau's trips to the United States became longer and more frequent.  When Lau temporarily visited the United States during this period, he did so pursuant to a nonimmigrant visa.  Lau was finally admitted to the United States as a lawful permanent resident (an "LPR") on September 7, 2007.

On May 7, 2012, Lau was charged with third-degree trademark counterfeiting in violation of New Jersey law.  While awaiting trial, he temporarily left the United States.  Upon his return on June 15, 2012, he presented himself to the immigration authorities at John F. Kennedy International Airport as a returning LPR.  In light of Lau's pending charge, the immigration officer declined to admit him to the United States and instead paroled him for deferred inspection pursuant to 8 U.S.C. § 1182(d)(5)(A), which permits the Secretary of Homeland

Security "in his discretion [to] parole into the United States temporarily . . . any alien applying for admission to the United States" under certain conditions.

Just over a year later, on June 24, 2013, Lau entered a guilty plea and was subsequently convicted of trademark counterfeiting in violation of N.J. Rev. Stat. § 2C:21-32(c). He was sentenced to two years' probation.

On March 13, 2014, DHS initiated removal proceedings against Lau, asserting that he was removable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), which provides that an alien is "ineligible to be admitted to the United States" if he has been "convicted of . . . a crime involving moral turpitude." Lau sought to terminate these removal proceedings, arguing that DHS improperly classified him as "seeking admission . . . as an arriving alien" when he returned from his brief trip abroad, instead of admitting him as an LPR. Certified Admin. Rec. at 389–90. Lau also asserted that his conviction for trademark counterfeiting fell within the "petty offense" exception to section 1182(a)(2)(A)(ii)(II). *Id.* at 390.[1]

On April 20, 2016, Lau applied for a 212(h) waiver, which allows the Attorney General to waive grounds of inadmissibility in certain circumstances. To

---

[1] The "petty offense" exception provides that an alien shall not be deemed inadmissible if the maximum possible penalty for the crime did not exceed imprisonment for one year and the alien was sentenced to a term of imprisonment of six months or less. *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(II).

be eligible for such a waiver, the alien must have "lawfully resided continuously in the United States for a period of not less than [seven] years immediately preceding the date of initiation of proceedings to remove the alien." 8 U.S.C. § 1182(h). In applying for this waiver, Lau acknowledged that he had only been an LPR for approximately six years and seven months at the time his removal proceedings were initiated. He nevertheless argued that the time he spent in the United States prior to September 7, 2007, pursuant to a nonimmigrant visa, should be counted toward his period of continuous residency.

## B.    Procedural History

On March 20, 2018, the IJ issued an oral decision in which he determined that Lau's conviction for trademark counterfeiting constituted a CIMT and that Lau's conviction did not fall within the petty offense exception because the maximum sentence for trademark counterfeiting was more than one year. The IJ also concluded that, because Lau had already committed the crime of trademark counterfeiting when he sought reentry into the United States, he was properly

6

classified as "inadmissible" upon his arrival and was appropriately paroled even though he had not yet been convicted of trademark counterfeiting.

As to Lau's request for a 212(h) waiver, the IJ concluded that Lau was ineligible for such a waiver because he had not "resided continuously" in the United States for a period of seven years prior to the initiation of his removal proceedings. Certified Admin. Rec. at 64–65. In particular, the IJ determined that Lau was still a resident of China during the periods in which he was in the United States on a nonimmigrant visa and concluded that these periods could not be counted towards the residency requirement for a 212(h) waiver. The IJ further found that such trips to the United States were intermittent and did not constitute a period of "continuous" residency. *Id.* at 68.

On November 23, 2021, the BIA affirmed the IJ's decision and dismissed Lau's appeal. The BIA concluded that the IJ properly determined that Lau committed a CIMT, noting that Lau's conviction for trademark counterfeiting "conclusively establishe[d] that his conduct corresponded to the elements of that crime, including the intent and knowledge elements." *Id.* at 4–5. The BIA also rejected Lau's contention that his conviction was covered by the petty offense

exception, agreeing with the IJ that the exception was inapplicable because Lau's crime of conviction carried a maximum sentence of five years' imprisonment.

The BIA additionally rejected Lau's argument that he was improperly classified as an applicant for admission when he returned to the United States from abroad while a criminal charge was pending against him. On this point, the BIA concluded that Lau's argument was foreclosed by *Matter of Valenzuela-Felix*, in which the BIA held that the Immigration and Nationality Act (the "INA") "does not purport to restrict the DHS's law enforcement authority to parole a returning [LPR] until pending criminal charges potentially giving rise to inadmissibility can be resolved" or "prevent the DHS from treating a returning resident as an arriving alien until an ultimate determination is made." 26 I. & N. Dec. 53, 57 (B.I.A. 2012). Because Lau failed to acknowledge or distinguish this case in his brief, the BIA deemed this decision controlling. Having concluded that Lau was properly removable, the BIA then considered whether Lau was eligible for a 212(h) waiver. The BIA rejected Lau's arguments that the time he spent in the United States pursuant to a nonimmigrant visa counted toward his continuous residence and

that his Notice to Appear was defective such that he actually met the residency requirement.

On December 6, 2021, Lau filed the instant petition for review of the BIA's decision. Before us, Lau argues only that the agency erred in concluding that (1) DHS properly treated him as an applicant for admission when he reentered the United States while his trademark-counterfeiting charge was pending; (2) his conviction for trademark counterfeiting constituted a CIMT; and (3) he was ineligible for a 212(h) waiver.

We agree with Lau that a pending criminal charge does not provide the clear and convincing evidence of a CIMT necessary for DHS to consider an LPR an applicant for admission at the time of reentry and then parole him under section 1182. We therefore grant his petition, without reaching his alternative arguments that his subsequent conviction for trademark counterfeiting does not constitute a CIMT or that he was improperly denied a 212(h) waiver of inadmissibility. *See Obeya v. Sessions*, 884 F.3d 442, 445 n.1 (2d Cir. 2018) (granting petition for review of BIA order affirming an IJ's removal order on one ground; acknowledging without deciding "alternative arguments" for granting petition).

## II.    STANDARD OF REVIEW

"When, as here, the BIA adopts and expands upon an IJ's decision, we review both the IJ and BIA decisions."  *Jung Hee Jang v. Garland*, 42 F.4th 56, 59 (2d Cir. 2022); *see also Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007).  We review an IJ's legal conclusions – including whether a petitioner was properly treated as an arriving alien applying for admission – *de novo*.  *See Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007).  We also review "BIA determinations of law *de novo*." *Nwozuzu v. Holder*, 726 F.3d 323, 326 (2d Cir. 2013).  Of course, courts may give "[c]areful attention to the judgment of the Executive Branch" when interpreting a statute, but such careful attention must not prohibit courts from exercising "their independent judgment."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024).

## III.    DISCUSSION

Lau contends that we must vacate the BIA's order of removal because DHS improperly classified him as an applicant for admission and paroled him when he returned to the United States from a trip abroad, when it should have admitted him.  We begin our analysis with the statutory text.  *See Nwozuzu*, 726 F.3d at 327. Section 1182 of the INA, titled "[i]nadmissible aliens," discusses the circumstances

in which aliens are "ineligible to be admitted to the United States."  8 U.S.C.

§ 1182(a).[2]  Section 1182 grants DHS discretion to "parole into the United States

temporarily . . . *any alien applying for admission* to the United States" "for urgent

humanitarian reasons or significant public benefit."  *Id.* § 1182(d)(5)(A) (emphasis

added).  Although an alien who is paroled is allowed to enter the country, he is

not "considered to have been admitted" for the purposes of the immigration laws.

*Id.* § 1101(a)(13)(B).

The INA makes clear that "alien[s] lawfully admitted for permanent

residence in the United States" – LPRs – who are returning to the United States

from visits abroad "shall not be regarded as seeking an admission into the United

States," subject to certain enumerated exceptions.  *Id.* § 1101(a)(13)(C).  As relevant

here, LPRs *may* be regarded as seeking admission to the United States if they

"ha[ve] committed" certain offenses, *id.* § 1101(a)(13)(C)(v), including "crime[s]

involving moral turpitude," *id.* § 1182(a)(2)(A)(i)(I).  Accordingly, the plain

language of section 1101 makes clear that LPRs are *not* considered to be "seeking

. . . admission" upon reentry to the United States *unless* certain enumerated

---

[2] Notably, section 1182 is distinct from another provision of the INA – section 1227, titled "[d]eportable aliens" – which addresses the circumstances in which an alien who has *already been* "*admitted* to the United States shall . . . be removed" from the country.  8 U.S.C. § 1227(a) (emphasis added).

circumstances – including their having committed a CIMT – are present.  *Id.*
§ 1101(a)(13)(C).

    We have already had occasion to consider the question of *when* an
individual is deemed to have "committed" a crime for the purposes of section
1101.  In *Centurion v. Sessions*, we examined when the "legal consequences of
[section] 1101(a)(13)(C)(v) attach" to an alien's criminal conduct and held that such
consequences attach "when an alien engages in criminal conduct" as opposed to
"once the offense has been adjudicated."  860 F.3d 69, 75 (2d Cir. 2017).  To that
end, we explained that section 1101(a)(13)(C)(v) does not "expressly require[] an
alien to have been convicted of an offense for specific consequences to attach."  *Id.*
at 76.  However, we noted that – although the legal consequences of a CIMT attach
at the time of commission – "in practice, those consequences may not be
enforceable in any meaningful way until after the [LPR] is convicted of the crime."
*Id.* at 77.  This is because it will generally be difficult for DHS to find, by clear and
convincing evidence, that the alien has committed a qualifying crime at the time
of admission if the admission precedes the LPR's criminal trial or admission of
guilt.  *See id.*; *see also Matter of Rivens*, 25 I. & N. Dec. 623, 625 (B.I.A. 2011) ("DHS
bears the burden of proving by clear and convincing evidence that a returning

[LPR] is to be regarded as seeking an admission.").  The officer at the border will ordinarily do so by "check[ing] the alien's records for a conviction" and nothing else.  *Centurion*, 860 F.3d at 77.

Here, we are presented with the question of whether DHS may parole an LPR at the border who has been charged with – but not yet convicted of – a CIMT.  In analyzing this question, we heed *Centurion*'s holding that an LPR becomes an alien applying for admission for purposes of section 1101(a)(13)(C) upon the commission, rather than the conviction, of a crime.  But we are also cognizant of the reality that, without a conviction, DHS will be hard pressed to prove by clear and convincing evidence that the LPR actually committed the crime in question at the time of reentry.  If DHS fails to sustain its burden of proving otherwise, the default presumption governs that an LPR is not an applicant for admission.

In *Matter of Valenzuela-Felix*, the BIA addressed the issue currently before us, holding that DHS can rely on an alien's "subsequent conviction to sustain its burden of proving that he was properly charged as an [inadmissible] arriving alien" at the time of reentry.  26 I. & N. Dec. at 55.  In so holding, the BIA determined that DHS's "authority to parole for purposes of prosecution is not limited to applicants for admission," *id.*, and rejected the notion that "DHS must

meet a threshold standard before it may parole a returning [LPR] into the United States for prosecution and then charge him with inadmissibility on the basis of the results," *id.* at 62. Put simply, the BIA did not interpret the INA "to constrain the DHS in its ability to prove the applicability of one of the six enumerated exceptions in section [1101(a)(13)(C)] by limiting the DHS to using the evidence it already possesses when a returning [LPR] presents himself at a port of entry." *Id.* at 63–64. In essence, the BIA concluded that DHS officials had the authority to parole LPRs into the country at the time of reentry only to later reclassify their entry, *nunc pro tunc,* based on the subsequent results of the criminal prosecution.

We cannot agree with *Valenzuela-Felix*'s interpretation of the relevant provisions of the INA. The INA *explicitly* provides that an LPR "*shall not* be regarded as seeking an admission into the United States," except in certain enumerated circumstances, 8 U.S.C. § 1101(a)(13)(C) (emphasis added) – including when the alien "has committed," *id.* § 1101(a)(13)(C)(v), a "crime involving moral turpitude," *id.* § 1182(a)(2)(A)(i)(I). Critically, the INA does not provide that an LPR may be treated as seeking admission when he has been "charged with a crime" or is "believed to have committed a crime;" it permits such treatment only when an LPR "has committed" a crime. *Id.* § 1101(a)(13)(C)(v). And because

14

"DHS bears the burden of proving by clear and convincing evidence that a returning [LPR] is to be regarded as seeking an admission," *Rivens*, 25 I. & N. Dec. at 625, we do not see how charging documents alone – without more – could carry DHS's burden of demonstrating that a crime had been *committed* at the time of an LPR's reentry. *See United States v. Salerno*, 829 F.2d 345, 346 (2d Cir. 1987) (Newman, *J.*, concurring) (acknowledging that the clear-and-convincing-evidence standard is higher than that of probable cause).

The INA is also explicit that the parole process is authorized *only* for "alien[s] applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A); *see also Matter of Pena*, 26 I. & N. Dec. 613, 615 (B.I.A. 2015) ("[A]n alien returning to the United States who has been granted [LPR] status cannot be regarded as seeking admission and may not be charged with inadmissibility . . . if he does not fall within any of the exceptions in section [1101(a)(13)(C)] of the [INA].").  Based on this clear statutory directive, we cannot agree that the INA allows DHS to treat a returning LPR as an applicant for admission based on the *suspicion* that a CIMT has been committed, leaving open whether this suspicion will ever be confirmed by a subsequent conviction.  The parole procedure sanctioned by *Valenzuela-Felix* is therefore contrary to the INA's text, which nowhere authorizes DHS to treat

LPRs as having "committed" unproven, charged crimes at the time of reentry by paroling them first and proving their guilt later.

We respectfully disagree with our sister circuits that the INA is unclear as to *when* DHS must determine whether an LPR is an applicant for admission. In *Munoz v. Holder*, the Fifth Circuit held that, because "[n]othing in the plain language of [the INA] limits the timing of the [section 1101(a)(13)(C)(v)] determination," DHS was empowered to use "subsequent convictions . . . to determine whether a[n] [LPR] was an applicant for admission" at the time of reentry. 755 F.3d 366, 370–71 (5th Cir. 2014); *see also Vazquez Romero v. Garland*, 999 F.3d 656, 664 (9th Cir. 2021) (deferring under pre-*Loper Bright* framework to BIA's interpretation of the INA "as allowing the government to exercise its discretion to parole a returning LPR into the United States for prosecution before satisfying its burden of proof"). As explained above, the INA is unmistakably clear that the default presumption is that LPRs will *not* be treated as seeking admission *unless* certain threshold determinations have been made. *See* 8 U.S.C. § 1101(a)(13)(C). Allowing DHS to defer such a determination and take a wait-and-see approach contingent on whether a conviction eventually materializes effectively nullifies this clear command. *See id.* § 1182(a)(2)(A)(i)(I) (providing that a CIMT renders an

alien "inadmissible"); *see also Rivens*, 25 I & N Dec. at 625 (requiring DHS to meet its "burden of proving by clear and convincing evidence that a returning lawful permanent resident is to be regarded as seeking an admission").

Contrary to our sister circuits' conclusion that the INA is silent on the issue of timing, we find that the INA is definitive on the question of *sequence*: DHS must determine whether an LPR is an applicant for admission as a threshold matter *before* it is authorized to parole (rather than admit) that individual. *See* 8 U.S.C. § 1101(a)(13)(C) (establishing a presumption that LPRs are not to be treated as seeking admission except upon a finding of certain specified conditions); *id.* § 1182(d)(5)(A) (authorizing parole only with regard to "alien[s] applying for admission to the United States"). Accordingly, we see no statutory basis to conclude that DHS is allowed to use a subsequent conviction to provide an after-the-fact justification for its prior decision to parole an LPR upon reentry.

Our decision does not leave DHS without lawful means to remove LPRs who have committed CIMTs. Section 1227 provides that any alien who "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission" is deportable. 8 U.S.C. § 1227(a)(2)(A)(i)(I); *see also id.* § 1227(a)(1)(A) ("Any alien who at the time of entry or adjustment of status was

17

within one or more of the classes of aliens inadmissible by the law existing at such time is deportable.").  The government did not seek to remove Lau under that section.  Because the BIA's decision in this case constitutes a final agency determination, "we may consider only those issues that formed the basis for that decision."  *Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 122 (2d Cir. 2007), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the agency erred in finding Lau removable pursuant to section 1182(a)(2)(A)(i)(I).  We therefore **GRANT** Lau's petition for review, **VACATE** the final order of removal, and **REMAND** this case to the agency with instructions to terminate removal proceedings against Lau on the basis of his inadmissibility under section 1182(a), without prejudice to any future deportation proceeding, such as one brought pursuant to 8 U.S.C. § 1227(a).

18